STATE OF SOUTH DAKOTA             IN CIRCUIT COURT
: SS
COUNTY OF CODINGTON           THIRD JUDICIAL CIRCUIT

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| G L O, INC.,                       ) | |
|                              ) | |
|          Plaintiff,        ) | |
|                              ) | |
| v.                             ) | COMPLAINT |
|                              ) | |
| WM KUETHER, INCORPORATED   ) | |
| and WILLIAM M. KUETHER,       ) | |
|                              ) | |
|          Defendant.       ) | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

For its Complaint against the Defendants, G L O, Inc., the Plaintiff, states and alleges:

    1.      The Plaintiff, G L O, Inc., is a South Dakota corporation based in Watertown, Codington County, South Dakota. The Plaintiff is referred to as "GLO" in this Complaint.

    2.      Defendant Wm Kuether, Incorporated, was a Minnesota corporation, which, stating on information and belief and based on the public records maintained by the Minnesota Secretary of State, was administratively dissolved effective February 25, 2013. The Defendant corporation is referred to as "WKI" in this Complaint.

    3.      Stating on information and belief, Defendant William M. Kuether is a resident of the State of Minnesota and was the principal officer, director and shareholder of WKI. For convenience, William M. Kuether is referred to in this Complaint as the "Guarantor".

    4.      Effective February 25, 2012, GLO, as Seller, and WKI, as Purchaser, entered into an Asset Purchase Agreement, a true and correct copy of which is attached to and incorporated in this Complaint as Exhibit 1. The Asset Purchase Agreement is referred to in this Complaint as the "APA". The purchase price for the assets was $330,000.00.

    5.      As part of the payment of the purchase price pursuant to the APA, WKI executed and delivered to GLO two Promissory Notes described as follows:

    a.      A Promissory Note dated March 12, 2012, in the original principal sum of $90,000.00, a true and correct copy of which attached to and incorporated

1



in this Complaint as Exhibit 2.

b.  A Promissory Note dated March 12, 2012, in the original principal sum of $125,000.00, a true and correct copy of which is attached to and incorporated in this Complaint as Exhibit 3.

6.  As agreed in the APA, the Guarantor executed and delivered to GLO, a Commercial Guaranty dated March 12, 2012, a true and correct copy of which is attached to and incorporated in this Complaint as Exhibit 4.

7.  WKI has defaulted on the payment requirements of the $90,000 Note. The Note required installment payments of $3,000 principal plus accrued interest, starting May 11, 2012 and continuing thereafter for a total of 30 installments. WKI made the required installment payments through the payment due April 11, 2013. The installment payment due May 11, 2013, was paid in two parts with the first part (interest plus $1,500 principal) paid on or about May 11, 2013, and the second part (interest plus $1,500 principal) on or about June 21, 2013. The payment due June 11, 2013 and all subsequently-due payments were not paid and, therefore, as of June 11, 2013, WKI was in default of the Note. GLO exercised its option to increase the rate of interest to 12 per cent due to WKI's default, calculated from and after June 11, 2013.

8.  The $125,000 Note is a single-pay Note and its entire principal balance plus all accrued interest was due November 12, 2014. However, WKI is in default on the $125,000 Note because WKI had defaulted on the $90,000 Note (see "Other Defaults" in the $125,000 Note). GLO exercised its option to increase the rate of interest to 12 per cent due to WKI's default, calculated from and after June 11, 2013.

9.  On June 11, 2013, after crediting the principal and interest payments made, the principal balance remaining due on the $90,000 Note was and continues to be, $51,851.44.

10.  On June 11, 2013, the principal balance remaining due on the $125,000 Note was and continues to be $125,000. Interest had accrued and was unpaid on the $125,000 Note from March 12, 2012, to June 11, 2013, at the rate stated in the Note, 1.39%, for a total of $2,170.68 interest.

11.  As a result of the WKI defaults on the two Notes, the entire principal balance due on each Note, plus all accrued interest including interest at the default rate from June 11, 2013, is declared accelerated and immediately due and payable.

12.  The combined principal balance due on the two Notes as of June 11, 2013, was $176,851.44. In addition to the interest due on the $125,000 Note calculated to June 11, 2013, interest on the combined principal balance is also due from June 11, 2013, to the date of the Judgment, at the rate of 12 per cent.

13. The Guarantor agreed to pay GLO's attorneys fees and expenses in the event of a default by WKI and action to enforce the Guaranty. Demand is hereby made for GLO's attorneys fees and expenses in this action.

14. Judgment should be entered in favor of GLO and against WKI and the Guarantor, jointly and severally, for principal and interest due on each Note plus interest to the date of the Judgment as described in this Complaint. Further, the Judgment against the Guarantor should include GLO's attorneys fees and expenses in connection with the enforcement of the Guaranty and demand is hereby made for the same.

WHEREFORE, G L O, Inc., the Plaintiff, prays for a Judgment as follows:

1. For the sum of $176,851.44 plus interest as described in this Complaint including interest from and after June 11, 2013, at the rate of 12 per cent, together with the costs and disbursements herein, with this portion of the Judgment being against Defendants Wm Kuether, Incorporated and William M. Kuether, jointly and severally;

2. For the attorneys fees and expenses incurred by the Plaintiff in this matter, with such amount being included in the Judgment against William M. Kuether; and

3. For such other relief as the court deems just in this matter.

Dated at Watertown, South Dakota, this 6th day of January, 2014.

Green, Roby, Oviatt, Cummings,
& Linngren LLP

By: _____
James C. Roby
816 S Broadway
PO Box 1600
Watertown, SD 57201-6600
(605) 886-5812

Attorneys for G L O, Inc., the Plaintiff

3

## ASSET PURCHASE AGREEMENT

**THIS AGREEMENT** is made this 25 day of FEB , 2012, between G L
O, INC., a South Dakota corporation, of 2820 Herzog Drive, Watertown, South Dakota
57201 (the "Seller"), and WM KUETHER, INCORPORATED., a Minnesota Corporation,
of 1919 YNCH WI #20 , MINNETONKA , Minnesota
55 (the "Purchaser").

**WITNESSETH:** In consideration of the mutual covenants, agreements,
representations and warranties herein contained, and intending to be legally bound, the
parties agree as follows:

**1. SALE AND PURCHASE OF ASSETS.**

1.1 <u>Sale of Assets</u>. Subject to the terms and conditions of this Agreement, Seller
agrees to sell and Purchaser agrees to buy, effective at the Closing, the following
"Assets" relating to Seller's business (FedEx Ground delivery) which are listed on
Exhibit A (the "Assets") attached hereto.

1.2 <u>Excluded Assets</u>. Only those Assets listed on Exhibit A are being sold pursuant to
this Agreement. Any Seller business asset not listed on Exhibit A is not a part of
the sale contemplated by this Agreement.

1.3 <u>Encumbrances</u>. Seller's Assets shall, at the time of Closing, be free and clear of all
liens, security interests or any other claim or encumbrance whatsoever except as
is expressly stated on Exhibit A.

1.4 <u>Purchase Price</u>. Purchaser shall pay to Seller the sum of $330,000.00 in the
manner following:

    (a) $2,000.00 tendered to the Seller prior to the execution of this Agreement,
the receipt of which is hereby acknowledged by Seller (said amount to be
returned to the Purchaser in the event the Closing described below does
not take place and the failure to close is not due to any act or omission of
the Purchaser; plus

    (b) $113,000.00 paid at the Closing; plus

    (c) $90,000.00 paid in 30 installments of $3,000.00 principal plus accrued
interest, with the first of such installments due on the 60th day following
the execution of this Agreement and subsequent installments due on the
same day of each month thereafter. Interest, starting from the date of this
Agreement, shall be calculated on the principal balance remaining due
from the $90,000.00 payment obligation, applying the rate of 1.39 per
cent per annum simple. Payment of the $90,000.00 described in this
section 1.4(c) shall be as provided in the Promissory Note attached hereto
as Exhibit B. And

    (d) $125,000.00, plus interest, paid on the date which is the 32nd monthly
anniversary of the date of this Agreement. Interest shall be calculated on
$125,000.00 from and after the date of this Agreement, applying the rate
of 1.39 per cent per annum simple. Payment of the $125,000.00 described

1

EXHIBIT 1

in this section 1.4(d) shall be as provided in the Promissory Note attached hereto as Exhibit C.

1.5    **Right of Prepayment; Discount for Early Prepayment.** Purchaser shall have the right to prepay sums remaining due following the execution of this Agreement as provided in the Promissory Notes represented by Exhibit B and Exhibit C. If Purchaser elects to pay in full BOTH Promissory Notes described in the above sections 1.4 (c) and 1.4 (d) within one year following Closing, then the combined total of the balances due on the two Notes shall be reduced by $25,000.00 for such early prepayment. If Purchaser elects to pay in full BOTH Promissory Notes described in the above sections 1.4 (c) and 1.4 (d) after the expiration of one year from the Closing but before the passage of two years following the Closing, then the total of the balances due on the two Notes shall be reduced by $12,500.00.

1.6    **Allocation of purchase price.** The purchase price shall be allocated as set forth on Exhibit A.

1.7    **Closing.** The closing of this transaction shall take place at _____ o'clock ____ .M., on the _____ day of March, 2012, at a location in Watertown, South Dakota, to be agreed by the Parties and if the Parties cannot agree on the place, then at a site selected by the Seller.

1.8    **Conduct of business.** Seller covenants, represents, and warrants in favor of Purchaser that pending completion of the Closing, unless otherwise agreed to in writing by Purchaser, Seller shall continue to use the Assets in its normal course of business and Seller shall not engage in any sale, enter into any transaction, contract or commitment, incur any liability or obligation or make any disbursement, not in the ordinary course of business. Seller shall carry and continue in force through the Closing, all of its usual and customary insurance coverages. Seller bears all risk of loss due to casualty occurring before Closing. Seller shall not amend, modify or terminate any agreement to which it is a party, except in the ordinary course of business.

**2.    REPRESENTATIONS AND WARRANTIES OF SELLER.** Seller covenants, represents and warrants to Purchaser as follows:

2.1    **Corporate Organization.** The Seller is a South Dakota corporation in good standing with the State of South Dakota and all Seller action described in this Agreement has been duly authorized by the Seller's board of directors and its Shareholders.

2.2    **Corporate Authority.** The Seller is the owner of and has title to, or can deliver title to, the Assets listed on Exhibit A or can deliver title to the Assets listed on Exhibit A. Seller has the full right, power and authority to enter into this Agreement and to carry out the terms and provisions hereof including but not limited to, the execution and delivery of this Agreement and all documents and instruments necessary or required to carry out the terms and conditions of this Agreement.

2.3    **No Liens.** The Assets are not subject to any lien, security interest or any other claim or encumbrance whatsoever except as is expressly stated on Exhibit A and that for those Assets which may be subject to any lien, security interest or other

2

claim or encumbrance, Seller shall deliver good title to Purchaser free and clear of all such liens, security interest, claims or encumbrances.

2.4  **No Taxes, Levies or Assessments.** There are no taxes, levies or assessments due or which will become due on any of the Assets.

2.5  **Representations and Warranties.** No representation or warranty by Seller in this Agreement contains or will contain any untrue statement or omits or will omit to state a material fact necessary to make the statements contained herein not misleading. All representations and warranties made by Seller in this Agreement shall be true and correct as of Closing with the same force and effect as if they had been made on and as of such date.

3.  **REPRESENTATIONS AND WARRANTIES OF PURCHASER.** Purchaser represents and warrants to Seller as follows:

3.1  **Corporate Organization.** The Purchaser is a Minnesota corporation in good standing with the State of Minnesota and all Purchaser action described in this Agreement has been duly authorized by the Purchaser's board of directors.

3.2  **Corporate Authority.** The Purchaser has the full right, power and authority to enter into this Agreement and to carry out the terms and provisions hereof including but not limited to, the execution and delivery of this Agreement and all documents and instruments necessary or required to carry out the terms and conditions of this Agreement.

3.3  **Representations and Warranties.** No representation or warranty by Purchaser in this Agreement contains or will contain any untrue statement or omits or will omit to state a material fact necessary to make the statements contained herein not misleading. All representations and warranties made by Purchaser in this Agreement shall be true and correct as of Closing with the same force and effect as if they had been made on and as of such date.

3.4  **Inspection and value.** Purchaser has formed its own opinion as to the value of Seller's Assets being purchased hereunder. The parties agree that Seller's warranties include only the express written warranties that are contained in this Agreement. Any other express warranties, oral or written, not contained in this Agreement are of no force and effect. Seller hereby disclaims all implied warranties, including without limitation, implied warranties of merchantability and of fitness for special or ordinary uses or purposes. The parties acknowledge that Purchaser has or will have prior to Closing inspected Seller's Assets to the full extent of Purchaser's desire, and Seller has given Purchaser ample opportunity to conduct such inspections. Seller's Assets being purchased hereunder, except as expressly warranted or represented herein, are purchased "As Is".

3.5  **No litigation.** No actions or proceedings are pending or, to Purchaser's best knowledge, threatened before any court, administrative authority or other authority that might materially or adversely affect Purchaser's ability or right to perform all of its obligations hereunder.

3.6  **Guaranty of William M. Kuether.** The Purchaser shall deliver to the Seller the

3

Commercial Guaranty of William M. Kuether in the form attached hereto as Exhibit D.

**4. LIABILITIES.** Except as may be expressly provided in this Agreement, Purchaser is purchasing hereunder only the Assets described in this Agreement and Purchaser is not assuming any liability of the Seller.

**5. INDEMNIFICATION.**

5.1 Seller Indemnification. If any claim, action, demand or proceeding shall be brought seeking to hold Purchaser liable arising out of the Seller's ownership and use of the Assets prior to the closing, the Seller shall, at its expense, defend Purchaser against any such claim, action, demand or proceeding, and indemnify and hold Purchaser harmless therefrom. Further, in the event such claim, action, demand or proceeding is brought, Seller shall pay all reasonable attorneys fees and expenses incurred by Purchaser in response to or in defense against such claim, action, demand or proceeding.

5.2 Purchaser Indemnification. If any claim, action, demand or proceeding shall be brought seeking to hold Seller liable arising out of the Purchaser's ownership and use of the Assets following the closing, the Purchaser shall, at its expense, defend Seller against any such claim, action, demand or proceeding, and indemnify and hold Seller harmless therefrom. Further, in the event such claim, action, demand or proceeding is brought, Purchaser shall pay all reasonable attorneys fees and expenses incurred by Seller in response to or in defense against such claim, action, demand or proceeding.

**6. CLOSING OBLIGATIONS.**

6.1 Purchaser's obligations at Closing. At Closing, Purchaser shall execute (and in the case of the Commercial Guaranty, shall cause to be executed) and deliver to Seller:

(a) True and complete copies of resolutions duly adopted by Purchaser's Board of Directors and duly certified by the Secretary of the corporation which provide all necessary corporate authorization for the execution and carrying out of this Agreement and its provisions.

(b) $113,000.00 in cash or by wire transfer to an account designated by Seller. Such payment shall be in collected funds upon which the Seller may immediately draw.

(c) The two original Promissory Notes in the forms attached hereto as Exhibits B and C.

(d) The Commercial Guaranty of William M. Kuether in the form attached hereto as Exhibit D.

(e) All other instruments and documents elsewhere required of Purchaser herein.

Purchaser acknowledges that the following Seller's Closing obligations are subject

4

to the Purchaser complying with and meeting the foregoing Purchaser's Closing obligations.

6.2     <u>Seller's obligations at Closing</u>. At Closing, Seller shall execute and deliver to Purchaser:

     (a)    A duly executed bill of sale in form satisfactory to Purchaser, duly endorsed Certificates of Title for the motor vehicles, and all other instruments, and documents of conveyance and transfer that may be necessary or appropriate duly to convey and transfer the Assets to Purchaser.

     (b)    True and complete copies of resolutions duly adopted by Seller's Board of Directors and duly certified by the Secretary of the corporation which provide all necessary corporate authorization for the execution and carrying out of this Agreement and its provisions.

     (c)    All other instruments and documents elsewhere required of Seller herein.

## 7.    MISCELLANEOUS.

7.1     <u>Successors and Assigns</u>. This Agreement shall be binding upon and inure to the benefit of the Parties hereto, their successors and assigns.

7.2     <u>Enforceability</u>. If any provision or covenant in this Agreement is deemed to be unenforceable because it exceeds any limit set by law, then such provision or covenant shall be construed as enforceable to the maximum extent permitted by law. If any provision or covenant in this Agreement is declared invalid or unenforceable for any reason, the remaining portions of the Agreement shall continue in full force and effect.

7.3     <u>Survival</u>. All representations, warranties, covenants and agreements contained in this Agreement, the exhibits hereto, the documents provided by the Parties at Closing, shall survive and not be affected in any respect by the Closing, in accordance with their specific terms or conditions or, if there are no such specific terms or conditions, then according to the applicable statute of limitation, and thereafter such representations, warranties, covenants and agreements shall expire and terminate and shall be of no further force.

7.4     <u>Execution of Additional Documents and Instruments</u>. Each Party does hereby covenant and agree, on demand, to execute any other or further instruments necessary or convenient to carry out the provisions of this Agreement.

7.5     <u>Applicable Law</u>. This Agreement is a South Dakota Agreement and the Parties agree that South Dakota substantive law controls any issues about interpretation of this Agreement or any part thereof. In the event any dispute arises under this Agreement including, but not limited to, the enforcement of the Agreement, any Promissory Note described in this Agreement, or the Commercial Guaranty given to Seller as required in this Agreement, the Parties agree that the proper venue for such dispute is the Circuit Court for Codington County, South Dakota. The Parties further agree that such court has personal jurisdiction of the Parties with respect to any such dispute.

5

7.6   **Entire Agreement.** This writing constitutes the entire agreement between the Parties and supersedes any and all prior and contemporaneous agreements or understandings, oral or written, between the Seller and Purchaser of any kind or character except those mentioned herein. Time is of the essence of this Agreement.

7.7   **Non-waiver.** No delay or failure by either Party to exercise any right hereunder, and no partial or single exercise of any such right, shall constitute a waiver of that or any other right, unless otherwise expressly provided herein.

7.8   **Headings.** Headings in this Agreement are for convenience and reference only and shall not be used to interpret or construe its provisions.

7.9   **Incorporation of Exhibits.** The Exhibits attached hereto are incorporated in this Agreement the same as though their terms, conditions and agreement were set out in full.

7.10   **Time of essence.** Time is an essential part of this Agreement.

**IN WITNESS WHEREOF,** the Parties have executed this Agreement the day and year first above written.

**SELLER:**                         G L O, INC.

(Corporate Seal)

                              BY: _____
                                     Glen Olene, President

**PURCHASER:**             WM KUETHER, INCORPORATED

(Corporate Seal)

                              BY: _____
                                     William M. Kuether, President

GLO to Kuether Asset Purch Agr 021412.wpd

6

# EXHIBIT A

## ASSETS

| Description | Allocation of Purchase Price |
|---|---|
| All right, title and interest in FedEx Ground work areas designated as 120; 128; 132; 136 and 152 and Seller's business Good Will | $250,000.00 |
| Delivery vehicles | $80,000.00 |

    Unit 83926: 2006 Freightliner, VIN 4uzaarbw56cw01138

    Unit 96277: 2009 Morgan Olson, VIN 5b4lpg2529348546

    Unit 95771: 1999 International, VIN 1HTMGABM8XA020541

    Unit 75469: 2000 International, VIN 1HTMGABM7YA024338

    Unit 96148: 2000 International, VIN 1HTMGAB1YAO23976

**Disclosure of lien per Asset Purchase Agreement Section 2.3:**
Unit 83926 described above currently is subject to a security interest lien securing payment of an outstanding principal balance of approximately $11,000.00. Seller represents, warrants and covenants that the balance due and owing which is secured by the lien on Unit 83926 shall be forthwith (in any event, in no more than 10 days following the Closing) paid in full and the lien discharged, using funds received by the Seller from the Purchaser at the Closing. Seller shall provide proof of the release of the lien on the title to the vehicle from Seller's lender.

## EXHIBIT B

## PROMISSORY NOTE

**Borrower:**     Wm Kuether, Incorporated
                 Address: _____

**Lender:**       G L O, Inc., 2820 Herzog Drive, Watertown, South Dakota 57201

**Principal Amount:**   $90,000.00

**Interest Rate:**    1.39%

**Date:**         _____, 2012

**PROMISE TO PAY.** WM. KUETHER, INCORPORATED ("Borrower") promises to pay to G L O, INC., ("Lender"), or order, in lawful money of the United States of America, the principal amount of Ninety Thousand & 00/100 Dollars ($90,000.00) or so much as may be outstanding, together with interest thereon calculated from the date of this Note stated above.

**PAYMENT.** Borrower will pay this loan in installments consisting of accrued and unpaid interest plus $3,000.00 in principal reduction, with the first of such installments due the 60th day following the date of this Note and similar installment due on the same day of each month thereafter for a total of 30 such installments. .

**INTEREST.** The interest rate on this Note is 1.39 per cent calculated from and after the date of this Note stated above.

**PREPAYMENT.** Borrower shall have the right to prepay this Note in whole or in part without a prepayment penalty and shall not be in default of the required payments so long as all payments made equal or exceed all payments required to be made on this Note. BORROWER HAS THE RIGHT TO CERTAIN PREPAYMENT DISCOUNTS AS DESCRIBED IN THE ASSET PURCHASE AGREEMENT OF EVEN DATE HEREOF.

**LATE CHARGE.** If a payment is five (5) days or more late, Borrower shall pay to Lender 5.0 per cent of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon default, Lender, at its option, may, if permitted under applicable law, increase the interest rate on this Note to 12.00 per cent upon such default.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

> **Payment Default.** Borrower fails to make any payment when due under this Note and such payment is more than five days past-due.

> **Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in any other agreement between Lender and Borrower including, for purposes of example and not limitation, the Asset Purchase Agreement between the Parties made on the date hereof, and the Promissory Note made by Borrower to Lender on the date hereof in the original principal sum of $125,000.00.

> **False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the Asset Purchase Agreement is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

> **Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made) or any other termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any

bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender reasonably believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith reasonably believes itself insecure.

**Cure Provisions.** If any default, **other than a default in payment** is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and may increase the interest rate to the default rate as provided above, and in such case the Borrower will pay that amount.

**GOVERNING LAW.** This Note is a South Dakota Note and the Parties agree that South Dakota substantive law controls any issues about interpretation of this Note or any part thereof.  In the event any dispute arises under this Note including, but not limited to, the enforcement of the Note, the Parties agree that the proper venue for such dispute is the Circuit Court for Codington County, South Dakota. The Parties further agree that such court has personal jurisdiction of the Parties with respect to any such dispute.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower, to the extent allowed by law, waives presentment, demand for payment, and notice of dishonor.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE AND BORROWER AGREES TO THE TERMS OF THE NOTE. BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

> **BORROWER:**
> WM KUETHER, INCORPORATED
>
>
> BY: _____
>      William M. Kuether, President

WM Kuether to GLO Note B 030212.wpd

2

**EXHIBIT C**

**PROMISSORY NOTE**

| | |
|---|---|
| **Borrower:** | Wm Kuether, Incorporated<br>Address: _____ |
| **Lender:** | G L O, Inc., 2820 Herzog Drive, Watertown, South Dakota 57201 |
| **Principal Amount:** | $125,000.00 |
| **Interest Rate:** | 1.39% |
| **Date:** | _____, 2012 |

**PROMISE TO PAY.** WM. KUETHER, INCORPORATED ("Borrower") promises to pay to G L O, INC., ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Hundred Twenty-Five Thousand & 00/100 Dollars ($125,000.00) or so much as may be outstanding, together with interest thereon calculated from the date of this Note stated above.

**SINGLE-PAY NOTE.** Borrower agrees to pay the entire principal balance, plus accrued interest, on or before the 32nd month anniversary following the date of this Note stated above.

**INTEREST.** The interest rate on this Note is 1.39 per cent calculated from and after the date of this Note stated above.

**PREPAYMENT.** Borrower shall have the right to prepay this Note in whole or in part without a prepayment penalty and shall not be in default of the required payments so long as all payments made equal or exceed all payments required to be made on this Note. BORROWER HAS THE RIGHT TO CERTAIN PREPAYMENT DISCOUNTS AS DESCRIBED IN THE ASSET PURCHASE AGREEMENT OF EVEN DATE HEREOF.

**INTEREST AFTER DEFAULT.** Upon default, Lender, at its option, may, if permitted under applicable law, increase the interest rate on this Note to 12.00 per cent upon such default.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

    **Payment Default.** Borrower fails to pay the Note when due.

    **Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in any other agreement between Lender and Borrower including, for purposes of example and not limitation, the Asset Purchase Agreement between the Parties made on the date hereof, and the Promissory Note made by Borrower to Lender on the date hereof in the original principal sum of $90,000.00.

    **False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the Asset Purchase Agreement is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

    **Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made) or any other termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

    **Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender.

However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender reasonably believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith reasonably believes itself insecure.

**Cure Provisions.** If any default, **other than a default in payment of this Note** is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and may increase the interest rate to the default rate as provided above, and in such case the Borrower will pay that amount.

**GOVERNING LAW.** This Note is a South Dakota Note and the Parties agree that South Dakota substantive law controls any issues about interpretation of this Note or any part thereof. In the event any dispute arises under this Note including, but not limited to, the enforcement of the Note, the Parties agree that the proper venue for such dispute is the Circuit Court for Codington County, South Dakota. The Parties further agree that such court has personal jurisdiction of the Parties with respect to any such dispute.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower, to the extent allowed by law, waives presentment, demand for payment, and notice of dishonor.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE AND BORROWER AGREES TO THE TERMS OF THE NOTE. BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

**BORROWER:**
WM KUETHER, INCORPORATED


BY:_____
      William M. Kuether, President

WM Kuether to GLO Note C 030212.wpd

2

**EXHIBIT D**

## COMMERCIAL GUARANTY

**Obligor:**   Wm Knether, Incorporated
Address: _____

**Obligee:**   G L O, Inc., 2820 Herzog Drive, Watertown, South Dakota 57201

**Guarantor:**   William M. Knether
Address:_____

**CONTINUING GUARANTY.** For good and valuable consideration and as an inducement for the Obligee, as Seller, to sell Assets to the Obligor, as Purchaser, all as described in that certain Asset Purchase Agreement entered into by the Obligor and the Obligee, and the Guarantor being the principal officer, director and shareholder in the Obligor corporation, the Guarantor absolutely and unconditionally guarantees payment and performance of all promises, obligations and agreements of the Obligor in the said Asset Purchase Agreement and its related documents including, but not limited to, the two Promissory Notes in the original sums of $90,000.00 and $125,000.00 made by the Obligor to the Obligee as part of the transaction described in the Asset Purchase Agreement.

**OBLIGATIONS GUARANTEED.** The Obligations guaranteed by this Guaranty includes any and all of Obligor's indebtedness to Obligee and is used in the most comprehensive sense and means and includes any and all of Obligor's liabilities, obligations and debts to Obligee, now existing or hereinafter incurred or created, including, without limitation, all loans, advances, interest, costs, debts, other obligations, and liabilities of Obligor to Obligee, and any present or future judgments against Obligor in favor of Obligee; and whether any such Obligation is voluntarily or involuntarily incurred, due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined; whether Obligor may be liable individually or jointly with others, or primarily or secondarily, or as guarantor or surety; whether recovery on the Obligation may be or may become barred or unenforceable against Obligor for any reason whatsoever; and whether the Obligation arises from transactions which may be voidable on account of ultra vires, or otherwise.

**DURATION OF GUARANTY.** This Guaranty will takes effect when received by Obligee without the necessity of any acceptance by Obligee, or any notice to Guarantor or to Obligor, and will continue in full force until all Obligations shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Obligee, by certified mail, at Obligee's address listed above or such other place as Obligee may designate in writing. However, written revocation of this Guaranty will apply only to new Obligations created after actual receipt by Obligee of Guarantor's written revocation. For this purpose and without limitation, the term "new Obligation" does not include any Obligation which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. This Guaranty will continue to bind Guarantor for all Obligations due and owing by Obligor to Obligee prior to receipt of Guarantor's written notice of revocation, including any extensions, renewals, substitutions or modifications of the Obligations. All renewals, extensions, substitutions, and modifications of the Obligations granted after Guarantor's revocation, are contemplated under this Guaranty and, specifically will not be considered to be new Obligations. This Guaranty shall bind Guarantor's estate as to Obligations created both before and after Guarantor's death or incapacity, regardless of Obligee's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's personal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Obligation shall not affect the liability of Guarantor under this Guaranty.

**GUARANTOR'S AUTHORIZATION TO OBLIGEE.** Guarantor authorizes Obligee, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Obligation or any part of the Obligation, including increases and decreases of the rate of interest on the Obligation; extensions may be repeated and may be for longer than the original loan term; (B) to release, substitute, agree not to sue, or deal with

anyone or more of Obligor's sureties, endorsers, or other guarantors on any terms or in any manner Obligee may choose; (C) to determine how, when and what application of payments and credits shall be made on the Obligation; and (D) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Obligee that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Obligor's request; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; and (E) Guarantor acknowledges its understanding that Obligee shall have no obligation to disclose to Guarantor any information or documents acquired by Obligee in the course of its relationship with Obligor.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Obligee (A) to continue extending credit to Obligor; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Obligation or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Obligor, Obligee, any surety, endorser, or other guarantor in connection with the Obligation or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Obligor or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Obligee from Obligor, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Obligee from Obligor or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Obligee's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Obligee from bringing any action, including a claim for deficiency, against Guarantor, before or after Obligee's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Obligee which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Obligor for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Obligation; (C) any disability or other defense of Obligor, of any other guarantor, or of any other person, or by reason of the cessation of Obligor's liability from any cause whatsoever, other than payment in full in legal tender, of the Obligation; (D) any right to claim discharge of the Obligation on the basis of unjustified impairment of any collateral for the Obligation; (E) any statute of limitations, if at any time any action or suit brought by Obligee against Guarantor is commenced, there is outstanding Obligation of Obligor to Obligee which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Obligation. If payment is made by Obligor, whether voluntarily or otherwise, or by any third party, on the Obligation and thereafter Obligee is forced to remit the amount of that payment to Obligor's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Obligation shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Obligor, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

2

**SUBORDINATION OF OBLIGOR'S DEBTS TO GUARANTOR.** Guarantor agrees that the Obligation of Obligor to Obligee, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Obligor, whether or not Obligor becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Obligor, upon any account whatsoever, to any claim that Obligee may now or hereafter have against Obligor. In the event of insolvency and consequent liquidation of the assets of Obligor, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Obligor applicable to the payment of the claims of both Obligee and Guarantor shall be paid to Obligee and shall be first applied by Obligee to the Obligation of Obligor to Obligee. Guarantor does hereby assign to Obligee all claims which it may have or acquire against Obligor or against any assignee or trustee in bankruptcy of Obligor; provided however, that such assignment shall be effective only for the purpose of assuring to Obligee full payment in legal tender of the Obligation. If Obligee so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Obligor to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Obligee. Guarantor agrees, and Obligee is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Obligee deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with the Asset Purchase Agreement between the Obligor and Obligee, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** To the extent permitted by law, Guarantor agrees to pay upon demand all of Obligee's costs and expenses, including Obligee's attorneys' fees and Obligee's legal expenses, incurred in connection with the enforcement of this Guaranty. Obligee may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Obligee's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law. This Guaranty shall be governed by the laws of the State of South Dakota without regard to its conflicts of law provisions. This Guaranty has been accepted by Obligee in the State of South Dakota.**

**Choice of Venue.** If there is a lawsuit, Guarantor agrees upon Obligee's request to submit to the jurisdiction of the Circuit Court for Codington County, South Dakota. The Guarantor agrees that such court has personal jurisdiction over the Guarantor with respect to any such dispute.

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Obligee harmless from all losses, claims, damages, and costs (including Obligee's attorneys' fees) suffered or incurred by Obligee as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** Words used in the singular shall be deemed to have been used in the plural and words used in the plural shall be deemed to have been used in the singular where the context and construction so require. The words "Guarantor," "Obligor," and "Obligee" include the personal or legal representatives, heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the

3

rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Obligor or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Obligee to inquire into the powers of Obligor or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any Obligation made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Obligee as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Obligee informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Obligee to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Obligee.** Obligee shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Obligee. No delay or omission on the part of Obligee in exercising any right shall operate as a waiver of such right or any other right. A waiver by Obligee of a provision of this Guaranty shall not prejudice or constitute a waiver of Obligee's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Obligee, nor any course of dealing between Obligee and Guarantor, shall constitute a waiver of any of Obligee's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Obligee is required under this Guaranty, the granting of such consent by Obligee in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Obligee.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

THE UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, THE GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO OBLIGEE AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY OBLIGEE IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE.

DATED THIS _____ DAY OF _____, 2012.

GUARANTOR:

(Signature)_____
William M. Kuether

Kuether Coml Guaranty Ex D 021112.wpd

4

EXHIBIT 2

## PROMISSORY NOTE

**Borrower:** Wm Kuether, Incorporated
Address: _1519 Yucca Ln #210 MN PK, MN 55375_

**Lender:** G L O, Inc., 2820 Herzog Drive, Watertown, South Dakota 57201

**Principal Amount:** $90,000.00

**Interest Rate:** 1.39%

**Date:** _3 · 12 - 12_, 2012

**PROMISE TO PAY. WM. KUETHER, INCORPORATED ("Borrower")** promises to pay to G L O, INC., ("Lender"), or order, in lawful money of the United States of America, the principal amount of Ninety Thousand & 00/100 Dollars ($90,000.00) or so much as may be outstanding, together with interest thereon calculated from the date of this Note stated above.

**PAYMENT.** Borrower will pay this loan in installments consisting of accrued and unpaid interest plus $3,000.00 in principal reduction, with the first of such installments due the 60th day following the date of this Note and similar installment due on the same day of each month thereafter for a total of 30 such installments.

**INTEREST.** The interest rate on this Note is 1.39 per cent calculated from and after the date of this Note stated above.

**PREPAYMENT.** Borrower shall have the right to prepay this Note in whole or in part without a prepayment penalty and shall not be in default of the required payments so long as all payments made equal or exceed all payments required to be made on this Note. BORROWER HAS THE RIGHT TO CERTAIN PREPAYMENT DISCOUNTS AS DESCRIBED IN THE ASSET PURCHASE AGREEMENT OF EVEN DATE HEREOF.

**LATE CHARGE.** If a payment is five (5) days or more late, Borrower shall pay to Lender 5.0 per cent of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon default, Lender, at its option, may, if permitted under applicable law, increase the interest rate on this Note to 12.00 per cent upon such default.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

   **Payment Default.** Borrower fails to make any payment when due under this Note and such payment is more than five days past-due.

   **Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in any other agreement between Lender and Borrower including, for purposes of example and not limitation, the Asset Purchase Agreement between the Parties made on the date hereof, and the Promissory Note made by Borrower to Lender on the date hereof in the original principal sum of $125,000.00.

   **False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the Asset Purchase Agreement is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

   **Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made) or any other termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any

bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender reasonably believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith reasonably believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and may increase the interest rate to the default rate as provided above, and in such case the Borrower will pay that amount.

**GOVERNING LAW.** This Note is a South Dakota Note and the Parties agree that South Dakota substantive law controls any issues about interpretation of this Note or any part thereof. In the event any dispute arises under this Note including, but not limited to, the enforcement of the Note, the Parties agree that the proper venue for such dispute is the Circuit Court for Codington County, South Dakota. The Parties further agree that such court has personal jurisdiction of the Parties with respect to any such dispute.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower, to the extent allowed by law, waives presentment, demand for payment, and notice of dishonor.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE AND BORROWER AGREES TO THE TERMS OF THE NOTE. BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

BORROWER:
WM KUETHER, INCORPORATED

BY: _____
William M. Kuether, President

WM Kuether to GLO Note 030212.wpd

3-12-12

2

EXHIBIT 3

## PROMISSORY NOTE

**Borrower:** Wm Kuether, Incorporated
Address: _1919 Jack LN #210 Mankia, MN 55304_

**Lender:** G L O, Inc., 2820 Herzog Drive, Watertown, South Dakota 57201

**Principal Amount:** $125,000.00

**Interest Rate:** 1.39%

**Date:** _3-12-12_, 2012

**PROMISE TO PAY. WM. KUETHER, INCORPORATED ("Borrower")** promises to pay to G L O, INC., ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Hundred Twenty-Five Thousand & 00/100 Dollars ($125,000.00) or so much as may be outstanding, together with interest thereon calculated from the date of this Note stated above.

**SINGLE-PAY NOTE.** Borrower agrees to pay the entire principal balance, plus accrued interest, on or before the 32nd month anniversary following the date of this Note stated above.

**INTEREST.** The interest rate on this Note is 1.39 per cent calculated from and after the date of this Note stated above.

**PREPAYMENT.** Borrower shall have the right to prepay this Note in whole or in part without a prepayment penalty and shall not be in default of the required payments so long as all payments made equal or exceed all payments required to be made on this Note. BORROWER HAS THE RIGHT TO CERTAIN PREPAYMENT DISCOUNTS AS DESCRIBED IN THE ASSET PURCHASE AGREEMENT OF EVEN DATE HEREOF.

**INTEREST AFTER DEFAULT.** Upon default, Lender, at its option, may, if permitted under applicable law, increase the interest rate on this Note to 12.00 per cent upon such default.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to pay the Note when due.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in any other agreement between Lender and Borrower including, for purposes of example and not limitation, the Asset Purchase Agreement between the Parties made on the date hereof, and the Promissory Note made by Borrower to Lender on the date hereof in the original principal sum of $90,000.00.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the Asset Purchase Agreement is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made) or any other termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender.

However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender reasonably believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith reasonably believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment of this Note is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and may increase the interest rate to the default rate as provided above, and in such case the Borrower will pay that amount.

**GOVERNING LAW.** This Note is a South Dakota Note and the Parties agree that South Dakota substantive law controls any issues about interpretation of this Note or any part thereof. In the event any dispute arises under this Note including, but not limited to, the enforcement of the Note, the Parties agree that the proper venue for such dispute is the Circuit Court for Codington County, South Dakota. The Parties further agree that such court has personal jurisdiction of the Parties with respect to any such dispute.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower, to the extent allowed by law, waives presentment, demand for payment, and notice of dishonor.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE AND BORROWER AGREES TO THE TERMS OF THE NOTE. BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

BORROWER:
WM KUETHER, INCORPORATED

BY: _____  3-12-12
William M. Kuether, President

WM Kuether to GLO Note C 030212.wpd

2

EXHIBIT 4

# COMMERCIAL GUARANTY

**Obligor:**  Wm Kuether, Incorporated
Address: _1919 YMCA LN #210 MTKA MN 55305_

**Obligee:**  G L O, Inc., 2820 Herzog Drive, Watertown, South Dakota 57201

**Guarantor:**  William M. Kuether
Address: _1919 YMCA LN #210 MTKA, MN 55305_

**CONTINUING GUARANTY.** For good and valuable consideration and as an inducement for the Obligee, as Seller, to sell Assets to the Obligor, as Purchaser, all as described in that certain Asset Purchase Agreement entered into by the Obligor and the Obligee, and the Guarantor being the principal officer, director and shareholder in the Obligor corporation, the Guarantor absolutely and unconditionally guarantees payment and performance of all promises, obligations and agreements of the Obligor in the said Asset Purchase Agreement and its related documents including, but not limited to, the two Promissory Notes in the original sums of $90,000.00 and $125,000.00 made by the Obligor to the Obligee as part of the transaction described in the Asset Purchase Agreement.

**OBLIGATIONS GUARANTEED.** The Obligations guaranteed by this Guaranty includes any and all of Obligor's indebtedness to Obligee and is used in the most comprehensive sense and means and includes any and all of Obligor's liabilities, obligations and debts to Obligee, now existing or hereinafter incurred or created, including, without limitation, all loans, advances, interest, costs, debts, other obligations, and liabilities of Obligor to Obligee, and any present or future judgments against Obligor in favor of Obligee; and whether any such Obligation is voluntarily or involuntarily incurred, due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined; whether Obligor may be liable individually or jointly with others, or primarily or secondarily, or as guarantor or surety; whether recovery on the Obligation may be or may become barred or unenforceable against Obligor for any reason whatsoever; and whether the Obligation arises from transactions which may be voidable on account of ultra vires, or otherwise.

**DURATION OF GUARANTY.** This Guaranty will takes effect when received by Obligee without the necessity of any acceptance by Obligee, or any notice to Guarantor or to Obligor, and will continue in full force until all Obligations shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Obligee, by certified mail, at Obligee's address listed above or such other place as Obligee may designate in writing. However, written revocation of this Guaranty will apply only to new Obligations created after actual receipt by Obligee of Guarantor's written revocation. For this purpose and without limitation, the term "new Obligation" does not include any Obligation which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. This Guaranty will continue to bind Guarantor for all Obligations due and owing by Obligor to Obligee prior to receipt of Guarantor's written notice of revocation, including any extensions, renewals, substitutions or modifications of the Obligations. All renewals, extensions, substitutions, and modifications of the Obligations granted after Guarantor's revocation, are contemplated under this Guaranty and, specifically will not be considered to be new Obligations. This Guaranty shall bind Guarantor's estate as to Obligations created both before and after Guarantor's death or incapacity, regardless of Obligee's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's personal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Obligation shall not affect the liability of Guarantor under this Guaranty.

**GUARANTOR'S AUTHORIZATION TO OBLIGEE.** Guarantor authorizes Obligee, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Obligation or any part of the Obligation, including increases and decreases of the rate of interest on the Obligation; extensions may be repeated and may be for longer than the original loan term; (B) to release, substitute, agree not to sue, or deal with

anyone or more of Obligor's sureties, endorsers, or other guarantors on any terms or in any manner Obligee may choose; (C) to determine how, when and what application of payments and credits shall be made on the Obligation; and (D) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Obligee that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Obligor's request; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; and (E) Guarantor acknowledges its understanding that Obligee shall have no obligation to disclose to Guarantor any information or documents acquired by Obligee in the course of its relationship with Obligor.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Obligee (A) to continue extending credit to Obligor; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Obligation or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Obligor, Obligee, any surety, endorser, or other guarantor in connection with the Obligation or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Obligor or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Obligee from Obligor, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Obligee from Obligor or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Obligee's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Obligee from bringing any action, including a claim for deficiency, against Guarantor, before or after Obligee's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Obligee which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Obligor for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Obligation; (C) any disability or other defense of Obligor, of any other guarantor, or of any other person, or by reason of the cessation of Obligor's liability from any cause whatsoever, other than payment in full in legal tender, of the Obligation; (D) any right to claim discharge of the Obligation on the basis of unjustified impairment of any collateral for the Obligation; (E) any statute of limitations, if at any time any action or suit brought by Obligee against Guarantor is commenced, there is outstanding Obligation of Obligor to Obligee which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Obligation. If payment is made by Obligor, whether voluntarily or otherwise, or by any third party, on the Obligation and thereafter Obligee is forced to remit the amount of that payment to Obligor's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Obligation shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Obligor, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

2

**SUBORDINATION OF OBLIGOR'S DEBTS TO GUARANTOR.** Guarantor agrees that the Obligation of Obligor to Obligee, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Obligor, whether or not Obligor becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Obligor, upon any account whatsoever, to any claim that Obligee may now or hereafter have against Obligor. In the event of insolvency and consequent liquidation of the assets of Obligor, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Obligor applicable to the payment of the claims of both Obligee and Guarantor shall be paid to Obligee and shall be first applied by Obligee to the Obligation of Obligor to Obligee. Guarantor does hereby assign to Obligee all claims which it may have or acquire against Obligor or against any assignee or trustee in bankruptcy of Obligor; provided however, that such assignment shall be effective only for the purpose of assuring to Obligee full payment in legal tender of the Obligation. If Obligee so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Obligor to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Obligee. Guarantor agrees, and Obligee is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Obligee deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with the Asset Purchase Agreement between the Obligor and Obligee, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** To the extent permitted by law, Guarantor agrees to pay upon demand all of Obligee's costs and expenses, including Obligee's attorneys' fees and Obligee's legal expenses, incurred in connection with the enforcement of this Guaranty. Obligee may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Obligee's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law. This Guaranty shall be governed by the laws of the State of South Dakota without regard to its conflicts of law provisions. This Guaranty has been accepted by Obligee in the State of South Dakota.**

**Choice of Venue.** If there is a lawsuit, Guarantor agrees upon Obligee's request to submit to the jurisdiction of the Circuit Court for Codington County, South Dakota. The Guarantor agrees that such court has personal jurisdiction over the Guarantor with respect to any such dispute.

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Obligee harmless from all losses, claims, damages, and costs (including Obligee's attorneys' fees) suffered or incurred by Obligee as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** Words used in the singular shall be deemed to have been used in the plural and words used in the plural shall be deemed to have been used in the singular where the context and construction so require. The words "Guarantor," "Obligor," and "Obligee" include the personal or legal representatives, heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the

3

rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Obligor or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Obligee to inquire into the powers of Obligor or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any Obligation made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Obligee as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Obligee informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Obligee to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Obligee.** Obligee shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Obligee. No delay or omission on the part of Obligee in exercising any right shall operate as a waiver of such right or any other right. A waiver by Obligee of a provision of this Guaranty shall not prejudice or constitute a waiver of Obligee's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Obligee, nor any course of dealing between Obligee and Guarantor, shall constitute a waiver of any of Obligee's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Obligee is required under this Guaranty, the granting of such consent by Obligee in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Obligee.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

THE UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, THE GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO OBLIGEE AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY OBLIGEE IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE.

DATED THIS 12 DAY OF MArch , 2012.

GUARANTOR:

(Signature) _____

William M. Knether

Knether Coml Guaranty Ex D 021112.wpd

4